**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBIN DAGHLIAN CURASCO, | Civil Action No. 2:15-3963 (CCC) |
| Plaintiff, | **AMENDED OPINION** |
| v. | |
| GERALD CALABRESE, et. al., | |
| Defendants. | |

**CECCHI, District Judge.**

## I.     INTRODUCTION

This matter comes before the Court on the motion [ECF No. 12] of Defendants Borough of Cliffside Park (the "Borough") and Sercan Zoklu ("Zoklu") (collectively, "Borough Defendants" or "Defendants") to dismiss several counts[1] of the First Amended Complaint [ECF No. 6] of Plaintiff Robin Daghlian Curasco ("Plaintiff") as against them, pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court decides the motion without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure.[2] For the reasons set forth below, the Borough Defendants' partial motion to dismiss is granted to the extent that Counts I, II, IV, V, VI, X, XIII, XV, XVIII, and XIX of Plaintiffs' First Amended Complaint as against the Borough Defendants are dismissed without prejudice.

---

[1]     The Defendants move to dismiss Counts I, II, IV, V, VI, X, XIII, XV, XVIII, and XIX of the First Amended Complaint with prejudice.

[2]     The Court considers any arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

1

## II.   RELEVANT BACKGROUND AND PROCEDURAL HISTORY[3]

Plaintiff's action arises from the events surrounding her termination by the Borough, after she allegedly complained about sexual harassment by her colleagues. See generally First Amended Complaint ("Am. Compl."), ECF No. 6. The Borough hired Plaintiff as an emergency medical technician ("EMT") in 1996. See id. ¶ 5. About ten years later, in 2007, Plaintiff experienced unwelcome touching and verbal sexual harassment from her supervisor, which culminated in a sexual assault at her home in 2010. See id. ¶¶ 6, 22, 34. Plaintiff reported the sexual harassment and assault to Defendants Mayor Gerald Calabrese and Zoklu, the Borough Clerk, who promised to investigate. See id. ¶ 41. Plaintiff alleges that Zoklu called Plaintiff into his office the next day and "demanded that Plaintiff turn over the recording which she had made of the assault and grilled her into retelling the facts of the sexual assault." See id. ¶¶ 43-44. She also alleges that Zoklu told her not to file criminal charges against her supervisor, because the Borough would "take care" of the criminal charges itself.[4] See id. ¶¶ 47-48.

Plaintiff retained an attorney, because she "feared for her job as [her complaints of sexual assault] brought potential embarrassment to the Borough . . . ." See id. ¶ 50. She also confided in her family friend, Defendant Mayor Calabrese, who "assured her he would look out for her, and she 'would always have a job.'" Id. ¶ 51. Based on the Mayor's assurances, Plaintiff did not complain to anyone outside of the Borough. See id. ¶ 53. Instead, Plaintiff went on a short administrative leave, during which she underwent therapy and counseling. See id. ¶ 56. When

---

[3]   The Court must assume as true all factual allegations of the complaint when considering a motion to dismiss. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).
[4]   At some point, Plaintiff's supervisor was placed on leave. The First Amended Complaint, however, does not reveal whether this was before or after the Borough's investigation. See Am. Compl. ¶ 39 ("For reasons not entirely known to Plaintiff, DeLeon was placed on leave from his position as EMS Director, and Defendant Police Chief Keane assumed the title of Acting EMS Director, and became Plaintiff's supervisor.").

2

Plaintiff returned to work, she frequently inquired into the status of the investigation. See id. ¶ 57.

In June 2010, after an internal hearing, the Borough allowed Plaintiff's supervisor to retire on medical disability, citing alcoholism. See id. ¶¶ 62-64. A thorough investigation of the Cliffside Park EMT Department was also ordered, given the claims of sexual harassment in the workplace. See id. ¶ 63. In late 2010, Plaintiff asked her former attorney if she could sue the Borough but was told that it was "'too late' to start a suit" and that Plaintiff's suit was foreclosed by her supervisor's termination of employment. Id. ¶ 58. The Borough then prepared a Release and Settlement Agreement and tendered $1,800 to Plaintiff's attorney as consideration. See id. ¶ 59. Plaintiff claims that she was not made aware of this agreement until January of 2013 and that, in any case, she did not execute it nor receive any part of the consideration. See id. ¶ 60.

Plaintiff also alleges that, during the period of the Borough's investigation, her co-workers grew angry with her for having complained about the sexual harassment. See id. ¶ 66. Plaintiff was then "intimidated, harassed, assaulted and threatened" by her coworkers and, although she complained to the assistant EMS Director about this conduct, nothing was done. See id. ¶¶ 66-67.

In the fall of 2010, Plaintiff failed her "fitness for duty" evaluation and contested her termination. See id. ¶ 69. The Borough agreed to allow Plaintiff to remain employed but placed her on a one-year period of probation, during which she had to undergo two additional "fitness for duty" evaluations. See id. ¶ 73. Plaintiff passed the next evaluation, in August 2011, and was told to forget about attending the third evaluation. See id. ¶¶ 77-78. During this time, Plaintiff alleges that the harassment—verbal abuse and shoving—by her coworkers continued. See id. ¶¶ 79-83.

In September 2012, Plaintiff made a formal police complaint of assault against one of her co-workers. See id. ¶ 86. She was then required to appear for a disciplinary meeting in October 2012, of which she made a personal recording. See id. ¶¶ 87-90. She was ordered to turn over

the recording within three days or she would be charged with insubordination. See id. ¶ 89. Around that time, the Borough advised all employees that they were not permitted to carry personal recordings and employees were given a short period of "'amnesty'" to turn in their recordings. See id. ¶ 94. Plaintiff gave the recording to her former attorney, who misplaced it. Id. She was then placed on immediate suspension for thirteen months and terminated on November 12, 2013. See id. ¶ 90.

Plaintiff filed her Complaint [ECF No. 1] on June 12, 2015 and First Amended Complaint on August 26, 2015 [ECF No. 6]. She alleges: as Count I, denial of procedural due process in violation of the New Jersey Constitution; as Count II, denial of substantive and procedural due process in violation of 42 U.S.C. § 1983; as Count III, conspiracy to deny due process rights in violation of 42 U.S.C. § 1985; as Count IV, municipal liability under 42 U.S.C. § 1983 and N.J.S.A. 10:6-1; as Count V, sexual harassment; as Count VI, estoppel from asserting statute of limitations defenses; as Count VIII, fraud by Defendant Calabrese; as Count IX, equitable estoppel against Defendant Borough; as Count X, Defendant Borough's fraud by the conduct of its agents, Defendants Calabrese and Keane; as Count XI, breach of contract; as Count XIII, Violation of the New Jersey Civil Rights Act ("NJCRA") for failure to implement appropriate policies; as Count XIV, violation of the New Jersey Law Against Discrimination ("NJLAD"); as Count XV, violation of the New Jersey Conscientious Employee Protection Act ("NJCEPA"); as Count XVI, assault by Defendant DeLeon; as Count XVII, battery by Defendant DeLeon; as Count XVIII, intentional infliction of emotional distress; and, as Count XIX, negligent infliction of emotional distress. See Am. Compl.[5]

---

[5]  Plaintiff previously alleged claims for professional negligence (as Counts VII and XII). These Counts were dismissed without prejudice by Stipulation and Order. See ECF No. 5.

4

### III. LEGAL STANDARDS

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "A pleading that offers labels and conclusions will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (internal citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

### IV. DISCUSSION

Defendants Borough and Zoklu move for dismissal of Counts I, II, IV, V, VI, X, XIII, XV, XVIII, and XIX of Plaintiff's First Amended Complaint with prejudice. They argue that the First Amended Complaint (specifically, Counts I, II, IV, and XIII) fails to state a viable civil rights claim upon which relief may be granted. See Ds' Br. In Supp., 7-11. Defendants also argue that Plaintiff's sexual harassment claims (Counts V and VI) are barred by the settlement agreement into which she entered and by the applicable statute of limitations. Id. at 11. Last, they contend

that Plaintiff's common law tort claims (Counts X, XVIII, and XIX), and NJCEPA claim (Count XV) are also barred by the applicable statute of limitations, and that the common law tort claims and state constitutional claims are barred for the additional reason that Plaintiff failed to timely file a notice of claim. Id. at 14-17. Plaintiff responds that: her First Amended Complaint contains sufficient plausible factual allegations in support of her civil rights and discrimination claims; the Borough Defendants are estopped from claiming any applicable statute of limitations defense to bar her tort claims; and, that discovery should proceed in this case. See Plaintiff's Brief in Opposition to Borough Defendants' Motion to Dismiss ("P's Br. In Opp."), ECF No. 15-1.

### A.   Dismissal of Plaintiff's Civil Rights Claims

Plaintiff's civil rights claims (Counts I, II, IV, and XIII) will be dismissed without prejudice, as Plaintiff has failed to show that the Borough Defendants deprived her of a right secured by the New Jersey or U.S. Constitutions.

#### 1.   Plaintiff's Procedural Due Process Claim (Count I)

Plaintiff alleges that, through the disciplinary hearing, her procedural due process rights were denied in violation of the NJCRA. See Am. Compl. ¶¶ 102-04. Namely, she claims that Defendants denied her due process by barring her "access to documentary records, in barring a witness and in limiting the examination of the Borough witnesses during her disciplinary proceeding...." Id. ¶ 106. Defendants argue that Plaintiff's claim should be dismissed because the NJCRA protects against only invasions of substantive due process, not procedural due process. See Ds' Br. In Opp., 8-9. Procedural due process claims are, indeed, outside of the scope of the NJCRA. See Major Tours, Inc. v. Colorel, 799 F. Supp. 2d 376, 405 (D.N.J. 2011) (explaining procedural due process claim cannot be brought under the NJCRA). Accordingly, Plaintiff's claim for the violation of her procedural due process rights (Count I) is dismissed.

### 2. Plaintiff's Substantive Due Process Claims (Counts II, IV, and XIII)

Plaintiff's substantive due process claims (Counts II, IV, and XIII) appear to be based on the loss of her employment as an EMT. For this Court to conclude that Plaintiff has stated a claim for the deprivation of her substantive due process rights, it must first extend the body of current case law by concluding that public at-will employment is a fundamental property right entitled to constitutional protection. But, the Third Circuit has made clear that "[t]o have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005). Moreover, "an at-will employee does not have a legitimate entitlement to continued employment because she serves solely at the pleasure of her employer. Therefore, once a court determines that a public employee 'held [her] position at the will and pleasure of the [governmental entity],' such a finding 'necessarily establishes that [the employee] had no property interest' in the job sufficient to trigger due process concerns." Id. (internal citations omitted); see also Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006) (affirming district court's determination that plaintiff's interest in retaining his public at-will employment was not a right within Fourteenth Amendment protection).

Here, Plaintiff argues that Defendant Calabrese's "promise that she 'would always have a job' with the Borough" created a right to continued, permanent employment. See P's Br. In Opp., 2. But, Defendant's Calabrese's statement to Plaintiff did not convert her at-will employment as an EMT into a permanent employment with the Borough. While "[a] property interest in employment can, of course, be created by ordinance, or by an implied contract," Bishop v. Wood, 426 U.S. 341, 344 (U.S. 1976), such is not the case where the person making the oral promise did not have the authority to bind the Borough. See, e.g., Erit v. Judge, Inc., 961 F. Supp. 774, 780

(D.N.J. 1997) (finding employer's relationship did not modify at-will employment where employer did not have the authority to make the oral agreement); Shebar v. Sanyo Bus. Sys. Corp., 218 N.J. Super. 111, 121 (App. Div. 1987) (noting plaintiff's superiors were authorized to make representation as to plaintiff's job security), aff'd, 111 N.J. 276 (1988). Contrary to Plaintiff's postulations, it does not appear that Defendant Calabrese, as the Mayor of the Borough, had the hiring and termination power over the Cliffside Park EMT Department such that he was authorized to promise Plaintiff permanent employment as an EMT. See N.J. Stat. Ann. § 40A:60-5.

Moreover, the New Jersey Supreme Court has clearly articulated its reluctance to enforce contracts for lifetime or permanent employment. See Savarese v. Pyrene Mfg. Co., 9 N.J. 595, 601 (1952) (surveying case law and finding that, in addition to the lack of authority to bind the company, the purported contract of employment "for the rest of your life" was too vague, imprecise, and uncertain to be enforceable). Thus, Plaintiff remained an at-will employee and did not have a fundamental property right in her continued employment as an EMT.

To the extent that Plaintiff attempts to characterize her claim as one for unreasonable "seizure" of her employment, no Section 1983 cause of action lies. See, e.g., Skrocki v. Caltabiano, 511 F. Supp. 651, 653 (E.D. Pa. 1981) ("Not surprisingly, plaintiff has cited no authority for the proposition that a person's alleged property interest in his employment can be 'seized' within the meaning of the Fourth Amendment to deprive him of a constitutional right . . . ."). Similarly, Plaintiff's allegations of a Fifth Amendment violation also fail, as the Fifth Amendment pertains to actions undertaken by the federal government. Harrington v. Lauer, 888 F. Supp. 616 (D.N.J. 1995). Because Plaintiff has not established a constitutional violation, Plaintiff can likewise not assert Monell claims. Knellinger v. York St. Prop. Dev., 57 F. Supp. 3d 462, 471 (E.D. Pa. 2014) ("[W]ithout an underlying constitutional violation, there can be no

8

Monell claim."). For these reasons, Counts II, IV, and XIII of Plaintiff's First Amended Complaint are dismissed.

**B.     Dismissal of Plaintiff's Sexual Harassment Claim (Counts V and VI)**

Plaintiff's First Amended Complaint alleges that the Defendants knew, or should have known, of the sexual harassment she experienced and that they failed to take any corrective measures to stop or prevent such conduct. See Am. Compl. ¶¶ 118-20. In October 2011, Plaintiff complained of "another instance of sexual misconduct involving Chief Keane. During that meeting, Plaintiff informed them of her sexual assault involving DeLeon."[6] See id. ¶ 84. This appears to be the most recent and last instance of sexual harassment, according to Plaintiff's First Amended Complaint. Plaintiff then instituted this action, nearly four years later, in June 2015. Under the NJLAD, the statute of limitations for such a claim is two years. Wilson v. Wal-Mart Stores, 158 N.J. 263, 266 (N.J. 1999); Montells v. Haynes, 133 N.J. 282, 292 (N.J. 1993). Thus, Plaintiff's sexual discrimination claim appears to be untimely.

Plaintiff contends that Defendants are estopped from raising a statute of limitations defense because they "induc[ed] Plaintiff to believe she was guaranteed lifetime employment in exchange for her silence about the sexual harassment by Defendant Deleon . . . ." Am. Compl. ¶ 124, Count VI ("Estoppel to assert the Statute of Limitations defense"). However, separate from this purported inducement, there exists a "Release and Settlement Agreement," which was signed by Plaintiff. See Exhibit C to Decl. of Joshua L. Weiner, ECF No. 12-3. The agreement is dated November 1, 2010 and releases the Borough from claims of discrimination "including, without

---

[6]     Although the First Amended Complaint references "another instance of sexual misconduct involving Chief Keane[,]" the First Amended Complaint does not appear to allege any prior instances of sexual misconduct involving Chief Keane. See generally Am. Compl. (emphasis added).

9

limitation, retaliation, harassment, etc." See id. Plaintiff's briefing seems to implicitly acknowledge that she did sign this settlement agreement but argues that the agreement only applies to the claims that arose before the agreement was signed. See P's Br. In Opp. at 2-3. Defendants, in turn, argue that estoppel is a nonissue, as there are no instances of sexual harassment that occurred after November 2010. See Defendants' Brief in Reply ("Ds' Reply Br."), ECF No. 16, 3-4.

Before addressing whether estoppel may apply to the post-settlement agreement sexual harassment claims, the Court must first look to see whether there are, in fact, such allegations of sexual harassment. As previously noted, Plaintiff's First Amended Complaint states that "[i]n October 2011, Plaintiff was called into the Bergen County Prosecutor's office to be asked about another instance of sexual misconduct involving Chief Keane. During that meeting, Plaintiff informed them of her sexual assault involving DeLeon." See Am. Compl. ¶ 84. Apart from this passing reference to "sexual misconduct involving Chief Keane[,]" there are no other allegations of sexual harassment that post-date the settlement agreement. As "threadbare recitals of the elements of a cause of action," Iqbal, 556 U.S. at 678, are insufficient to state a claim, Plaintiff's sexual harassment and estoppel claim (Counts V and VI) are dismissed at this stage.

### C.     Plaintiff's Common Law Tort Claims (Counts X, XVIII, and XIX)

The Borough Defendants argue that Plaintiff did not comply with the New Jersey Tort Claims Act ("NJTCA"), which requires a plaintiff to file a timely notice of claim before bringing an action in tort against a public entity or employee of New Jersey. Here, Plaintiff's claims for intentional infliction of emotional distress (Count XVIII) and negligent infliction of emotional distress (Count XIX) are subject to the NJTCA notice provision. Plaintiff argues that she has "sufficiently alleged a basis constituting extraordinary circumstances" to excuse the lack of a

timely notice of claim because her attorney at the time "failed to file the appropriate notices . . . [and told her in late 2010] that it was 'too late' to start a suit, that the situation '[was] over' . . . ." See P's Br. In Opp, at 26.

> It is true that the NJTCA does permit a late filing of a notice of claim when, upon motion:
>
> the affiant show[s] sufficient reasons constituting extraordinary circumstances for his failure to file [a] notice of claim within the period of time prescribed by section 59:8-8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter; provided that in no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim.

N.J. Stat. Ann. § 59:8-9. But, even if Plaintiff's reasons constitute "extraordinary circumstances[,]" this Court cannot permit a late notice of claim filed more than two years from the time Plaintiff's claims accrued.[7] See N.J. Stat. Ann. § 59:8-9; Iaconianni v. New Jersey Tpk. Auth., 236 N.J. Super. 294, 298 (App. Div. 1989) ("Because the late notice of claim was filed well beyond the one-year outer limit, the trial court had no jurisdiction to extend the filing period."). As such, Counts XVIII and XIX are dismissed for failure to comply with the NJTCA.

Regarding Plaintiff's claim for the Borough's vicarious liability for Defendant Calabrese's fraud (Count X), this claim will be dismissed. Defendants aptly note that the Borough, as a public entity, cannot be liable for the intentional torts committed by its employees. See D's Br. In Supp., 14-15. The NJTCA provides that "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice or willful misconduct." N.J. Stat. Ann. § 59:2-10. Thus, Count X is dismissed without prejudice.

---

[7] Defendants represent that at the time of the disciplinary hearing, Plaintiff was represented by different counsel, and, thus, should have been aware of the accrual of her claims. See Ds' Reply Br., 13.

### D. Dismissal of Plaintiff's NJCEPA Claim (Count XV)

Last, Defendants move for dismissal of Plaintiff's NJCEPA claim on the basis that it is barred by the one-year statute of limitations, which begins to run from the date of the final act of retaliation. An employee may bring a claim under NJCEPA for actionable retaliation "'within one year . . . in a court of competent jurisdiction.'" Green v. Jersey City Bd. of Educ., 177 N.J. 434, 446 (N.J. 2003) (quoting N.J. Stat. Ann. § 34:19-5). Plaintiff's employment was terminated on November 12, 2013. See Am. Compl. ¶ 90. Although Plaintiff filed her initial complaint in 2015, she argues that this Court should apply equitable tolling because she was prevented from filing her complaint in a timely manner due to her attorney having misinformed her in 2010. See P's Br. In Opp. at 27-28. "But for an attorney's mistake or misconduct to constitute grounds for equitable tolling, it must be shown that the attorney's mistake or misconduct was more than 'garden variety neglect.'" Baker v. Office Depot, Inc., 115 F. App'x 574, 577 (3d Cir. 2004) (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)). Here, it does not appear that the statements of Plaintiff's former attorney three years before her termination—that it was "too late to start a suit" and that her claims were forestalled—constitute the extraordinary circumstances necessary to justify equitable tolling. Accordingly, Plaintiff's NJCEPA claim is dismissed as untimely (Count XV).

### V. CONCLUSION

For the reasons set forth above, the Borough Defendants' motion to dismiss Plaintiff's First Amended Complaint is granted. The Court dismisses, without prejudice: Count I (denial of procedural due process in violation of the New Jersey Constitution); Count II (denial of substantive and procedural due process in violation of 42 U.S.C. § 1983); Count IV (municipal liability under 42 U.S.C. § 1983 and N.J.S.A. § 10:6-1); Count V (sexual harassment); Count VI (estoppel from

asserting statute of limitations defenses); Count X (Defendant Borough's liability for fraud by its agents); Count XIII (violation of the NJCRA); Count XV (violation of NJCEPA); Count XVIII (intentional infliction of emotional distress); and Count XIX (negligent infliction of emotional distress).

To the extent the deficiencies in Plaintiff's First Amended Complaint can be cured by way of amendment, Plaintiff is granted thirty (30) days to file a Second Amended Complaint solely for purposes of amending the dismissed claims.

An appropriate Order accompanies this Opinion.

Dated: September 20, 2016

**CLAIRE C. CECCHI, U.S.D.J.**